MATTER OF M/S "BERLIN"

In FINE Proceedings

NYC-10/52.627

*Decided by Board June 23, 1964*

Liability to fine is not incurred under section 254(a)(1), Immigration and
Nationality Act, for failure to detain on board until after inspection, since no
landing occurred when 4 crewmen in the performance of their duty to ex-
pedite and assist passengers in landing left the vessel upon arrival and
proceeded to their positions on the pier at the foot of the gangway, the imme-
diate vicinity of which they did not leave.

BASIS FOR FINES: Act of 1952—Section 254(a)(1) [8 U.S.C. 1284].

IN RE: M/S "BERLIN" which arrived at the port of New York from foreign
on March 25, 1964. Alien crewmen involved: Wilhelm Hermann, Edo
Timmer, Carl Heinz Ohland and Hans Westendorf.

The District Director at New York, in a decision dated May 1, 1964,
held that North German Lloyd, Inc., as owners, agents, charterers or
consignees of the M/S "Berlin," had incurred liability to administra-
tive penalties totaling $4,000, $1,000 as to each of the alien crewmen
named above, for failure to detain them on board the vessel until they
had been completely inspected by an immigration officer, including
a physical examination by a medical examiner. However, said offi-
cial found present herein factors which, in his opinion, merited miti-
gation of the fines to the minimum amount permissible under the
statute, to wit: down to $200 per crewman. Thus, the total penalty
which he permitted to stand was $800. The appeal from his decision,
which brings the case before this Board for consideration, will be
sustained.

It appears from the record before us that the following material
facts exist without substantial controversy. Three of the alien crew-
men named above were employed as stewards aboard the vessel, while
the other alien crewman involved was its purser. Three of them had
been so employed by the carrier for a period of from six to ten years,

while the other was comparatively new in the carrier's service. It was their duty, upon the vessel's arrival, to expedite and assist passengers in landing.

During the period of their employment, cutter boardings had been used almost exclusively, and personnel assigned to assist passengers in landing were examined on board prior to the docking of the vessel. Thus, the normal and instinctive actions of these crewmen upon the docking of the ship was to immediately take up their positions on the pier at the foot of the gangway in order to discharge their duties in respect to the passengers landing. It was their anxiety to continue their excellent performance of duty which caused them to forget that the usual examination by immigration authorities had not been made in this instance.

At no time did they leave the immediate vicinity of the gangway on the pier in the performance of their duties. When the violation was brought to the attention of the carrier's personnel a responsible party was immediately posted at the gangway on board the vessel to remind all other crew members of the necessity of examination before leaving the ship. Also, these crewmen were all in uniform at the time for ready identification. They were subsequently presented for inspection and all were granted D–1 conditional landing permits.

The element essential to the establishment of a violation of this section of the law is a "landing." It is our opinion that the foregoing does not establish that such an event occurred here within the purview of the statute. Rather, it demonstrates that the crewmen involved were at all times in close proximity to the gangway and their activities there were within the legitimate operation of the vessel. It is our opinion that to hold that violations had taken place under the circumstances outlined above would be to reach an absurd result, and no statute—quasi penal or otherwise—should be so interpreted.

ORDER: It is ordered that the appeal be sustained and that the fines be not imposed.

608